HENRY FRAZIER V. THE STATE.

No. 6040.    Decided January 12, 1921.

Rehearing granted January 26, 1921.

1.—Theft of Hog—Certiorari—Transcript.

Upon application of appellant to perfect the record for a writ of *certiorari,* the same is granted.

2.—Same—Insufficiency of the Evidence—Possession—Ownership.

Where, upon trial of theft of a hog, there was nothing in the record on appeal showing any claim of ownership or possession of the alleged stolen property by the defendant, the conviction could not be sustained.

3.—Same—Rule Stated—Recent Possession.

Where, upon trial of theft of a hog, the testimony for the State showed that when witness found the alleged property there were four people present, none of whom claimed the same or had the same in exclusive possession, one of whom was the accused, the conviction could not be sustained.

Appeal from the District Court of Hardin. Tried below before the Honorable D. F. Singleton.

Appeal from conviction of theft of a hog; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*B. A. Coe, L. G. Hurley,* and *A. D. Lipscomb,* for appellant.—On question of insufficiency of the evidence: Noble v. State, 192 S. W. Rep., 1072; Aguilar v. State, 194 id., 1117.

*Alvin M. Owsley,* Assistant Attorney General, for the State.

LATTIMORE, Judge.—Appellant makes his motion in this cause asking for a writ of *certiorari* to issue in order to perfect the record in this case. Appended to the application appear certified copies of the orders and instruments desired to be shown as part of the record, and to perfect same. Inasmuch as it would be necessary to entitle appellant to have his case considered by this Court, that said instruments and orders appear in the record, and it appearing that the showing made in said application is sufficient, it is, therefore, ordered and adjudged by this Court that said writ of certiorari be issued as prayed for, and said application is in all things granted.

*Writ of certiorari granted.*

LATTIMORE, Judge.—Appellant was convicted in the District Court of Hardin County of the theft of a hog, the property of Buster Gore, and given a sentence of two years in the penitentiary.

But two witnesses were introduced by the State. Buster Gore, the alleged owner, testified that he had a large number of hogs running out in the woods in territory surrounding his home, some of which were located about half a mile from the home of appellant's mother, and that during the winter preceding the alleged theft he had missed some of them; in fact, he stated that he missed hogs on the range very frequently. Mr. Gore said his mark was a crop and under half crop in one ear and a swallow fork and under bit in the other. He did not attempt to describe any hogs lost by him, other than to say that they were spotted and fat. Husky King was the other witness for the State, and he testified that on December 11, 1919, while hunting hogs of his own he went to the house of the mother of appellant, and found six dead hogs lying in the yard, two of which were marked crop and under half crop in one ear and swallow fork and under bit in the other.

While the witness was examining said hogs he stated that appellant and his brother, Jack Frazier, came out of the house, and that he saw another man and a woman in the house. The witness detailed some of the conversation he had with the parties, but stated that they made no claim of ownership or possession of the hogs and did not tell him whose they were and who had killed them, or how they came to be in the yard, or, in fact, anything about them. Witness said that he asked them no questions about the hogs and after he found out they were not his, he made a note in a little book of their marks and left. This constitutes the testimony for the State. On the part of the appellant there was much testimony showing that on the 11th of December, 1919, he worked all day for the Kirby Lumber Company, and the transaction as detailed by the witness King and the fact of the hogs being in the yard, etc., was all denied by the various parties who were at the the said house. There was some testimony tending to show that the witness King made contradictory statements about the hogs and where he saw them and who had them in charge, etc., which it is not necessary to discuss, in view of our disposal of the case.

Without discussing the question of the sufficiency of the identification of the alleged stolen property, it seems from the record that at the house in whose yard the witness King said he found the dead hogs, there were four people, none of whom claimed to own the hogs or have same in their possession. Possession appears to be the only circumstance of guilt, and in order to justify such inference, the possession must not only be shown to be recent and unexplained, but also, personal and exclusive in the party or parties sought to be charged thereby. The discovery of the alleged stolen property in the presence of a group of people, one of whom is the accused, unaccompanied by evidence of an acting together and thus of guilt as a principal or accomplice on the one hand; or of evidence which satisfactorily fixes possession in the person charged, would not support a conviction for theft as to any one of the said persons. That guilt as to one cannot be predicated on the mere presence of the group, and a general impersonal possession arising therefrom, seems too well settled to need discussion. Section 2463, Branch's Annotated Penal Code, and authorities there cited. We find nothing in this record showing any claim of ownership or possession of said hogs by this appellant, either in the testimony of the State or that of the defense. Guilt of his brother or of the woman at the house as fully appears as that of the appellant.

This being true, we are constrained to hold that the fact of recent personal, exclusive possession in the defendant being wholly wanting, the judgment must be reversed and the cause remanded.

*Reversed and remanded.*