# WESBECKER *v.* STATE

[No. 380, September Term, 1964.]

*Decided August 20, 1965.*

42

The cause was argued before PRESCOTT, C. J., and HAM-MOND, HORNEY, MARBURY and BARNES, JJ.

*William J. Smith, Jr.,* for appellant.

*David T. Mason, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General,* and *Marvin M. Anderson, State's Attorney for Anne Arundel County,* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

The appellant, Paul Wesbecker, defendant below, was indicted by the grand jury of Anne Arundel County on June 25, 1964 in four Counts as follows: Count 1, for forging a check dated January 1, 1964 for $432.50 signed by Joseph L. Lentz to the order of Paul Wesbecker, and drawn on the Girard Trust Corn Exchange Bank, Philadelphia and suburbs, with a notation "final payment on siding work" and endorsed "For deposit only Acc't. #47-657-2, Paul Wesbecker"; Count 2, for uttering the check described in Count 1; Count 3, for obtaining by a false pretense, $275.00 from Marguerite Howell which was the money of the Farmers National Bank of Annapolis in violation of Article 27, Section 140 of the Maryland Code; and, Count 4, the obtaining of $275.00, with intent to defraud, from The Farmers National Bank of Annapolis by use of a bad check dated January 3, 1964 drawn by Paul Wesbecker on that bank for $275.00 to the order of "Cash" and endorsed by Paul Wesbecker.

The defendant, represented by court appointed counsel, pleaded not guilty, and waived a jury trial. Counsel for the defendant filed a motion for a directed verdict of acquittal at the end of the State's case and at the conclusion of all of the testimony. The motions were overruled by the trial court. The defendant was found guilty on Counts 1, 2 and 3, not guilty on

Count 4, and was sentenced to eight years in the House of Correction.

The defendant opened a special checking account with the Girard Trust Corn Exchange Bank of Philadelphia, Pennsylvania (Girard Trust) on December 30, 1963 by depositing a check for $300.00 drawn on the South Carolina Bank of Charleston, South Carolina (Charleston Bank). At that time the defendant admitted that he only had a $40.00 or $50.00 balance in the Charleston Bank.

A few days later, on January 2, 1964, the defendant opened another special checking account with The Farmers National Bank in Annapolis, Maryland (Farmers National) by depositing, at its main office, an $800.00 check drawn on the Charleston Bank. At the time of opening the special checking account with Farmers National, the defendant was advised that he could not use any of the funds deposited until his $800.00 check was cleared by the Charleston Bank. Notwithstanding this, the defendant, on the afternoon of January 2, 1964, attempted to cash a $250.00 check at a drive-in branch of Farmers National in Annapolis. The teller called the main office of Farmers National and was told not to cash the $250.00 check because the $800.00 check deposited by the defendant at the main office drawn on an out-of-state bank had not cleared. This attempt to cash the $250.00 check made the banking official at the main office suspicious. He called the Charleston Bank about the $800.00 check and was told that the Charleston Bank would not pay the check when presented to it. The branch officer of Farmers National, other banks in the area and the local police department were notified of the situation.

The defendant also attempted to cash a $400.00 check drawn on Farmers National at the Annapolis branch of the Maryland National Bank on West Street prior to its notification by the Police Department to be on its guard in regard to checks presented by the defendant for cashing, but the teller declined to cash the check.

On January 3, 1964, the defendant returned to the drive-in branch of Farmers National and deposited a $432.50 check drawn on Girard Trust. This check purported to be signed by "Joseph L. Lentz" and had a notation upon it "final payment on

siding work." The check itself, however, had the account number "0-143-313" which is the account number of the *defendant's account* at Girard Trust. When the $432.50 check came to the Girard Trust for payment, the computer at the bank, reacting to the magnetic ink in the account number, posted the check to the defendant's account. As that account only had an apparent balance of $265.00 (the $300.00 original deposit of the check drawn on the Charleston Bank less a $35.00 check cleared on January 3, 1964), the check was returned as there were insufficient funds in the defendant's account to pay it. A careful search of the records of Girard Trust failed to disclose any account in the name of "Joseph L. Lentz." At the same time as the defendant made this deposit of the $432.50 check, he presented a $275.00 check dated January 3, 1964 and drawn on the defendant's account in Farmers National to the order of "Cash" and endorsed by the defendant. The defendant placed the address "1008 West St., City" under his endorsement. The defendant never lived at this address. The teller cashed the check for the defendant, giving him cash of the Farmers National. The teller positively identified the defendant as the person making the deposit and cashing the $275.00 check.

The defendant admitted that he endorsed the $432.50 check but denied that he had filled in the front of the check. He claims that this was done by Charles Edward Rhoades, who had formerly worked with the defendant, in door-to-door selling. The defendant claims that after the $275.00 check was cashed by Rhoades, the defendant and Rhoades divided the money equally. Rhoades denied that he did any of these things and stated that when he saw the defendant in Annapolis during three days in early January, 1964 when they were canvassing door-to-door, he did not see the defendant fill out, sign his name or anyone else's name to any checks. No expert testimony was produced by the State to indicate that the handwriting on the front of the $432.50 check was that of the defendant.

The defendant contends that there was insufficient evidence to justify his conviction under Count 1 for forging the $432.50 check as the State had failed to prove that he had filled in the front of that check.

As we stated in *Jacobs v. State,* 238 Md. 648, 650, 210 A. 2d 722, 723-724 (1965):

"\* \* \* [W]here the case is tried before the trial court without a jury, the trial court's 'judgment will not be set aside on the evidence unless clearly erroneous and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses.' Maryland Rule 886 a."

See also *Johns v. Director,* 239 Md. 411, 211 A. 2d 751 (1965).

It is clear to us that the trial court's determination of the facts cannot be said to be clearly erroneous and that there was sufficient evidence before the trial court, with the proper inferences from that evidence, to support the conviction for forgery under Count 1. The defendant, himself, admitted during his testimony that he endorsed the $432.50 check. He was positively identified by the teller as the person who deposited this check and who, at the same time, presented the $275.00 check for cashing and received the money when it was cashed. The $432.50 check is dated January 3, 1964, the day when the defendant deposited it, with the obvious intent to defraud. As the possessor of the forged $432.50 check and the utterer of it, there is an inference which established a prima facie case of guilt of forgery by the possessor. As stated by the Court in *People v. Murrie,* 168 C.A. 2d 770, 336 P. 2d 559, 561 (1959, Ct. of Ap. of Cal. 2nd Dist.), involving a forged check:

"[T]he possession of an instrument recently forged, by one claiming under it, like the possession of goods recently stolen, is evidence against the possessor." (Citing cases).

See *Commonwealth v. Aronson,* 312 Mass. 347, 44 N. E. 2d 679 (1942) and *Green v. State,* 152 Miss. 282, 119 So. 808 (1929). The *Green* case involved a check allegedly forged. The Supreme Court of Mississippi stated:

"Possession by the appellant of the forged instrument, with claim of title thereto, is prima facie evidence that he either forged it, or procured it to be

forged. And since the jury rejected his claim that he did not pass the check to Barnett, and believed that he did so pass it, his possession thereof was left unexplained and was therefore sufficient to warrant his conviction."

See also 1 Wharton's *Criminal Evidence* (12th Ed.), § 137, pages 259-260, to the same effect. Cf. *Cole v. State,* 232 Md. 111, 194 A. 2d 278 (1963), cert. den. 375 U. S. 980, 84 S. Ct. 503, 11 L. Ed. 2d 425 (1963) and *Medley v. Warden,* 210 Md. 649, 123 A. 2d 595 (1956) holding that there is a presumption, in the absence of evidence to the contrary, that a forgery was committed where the forged instrument was first uttered by the defendant or found in his possession.

The trial court was not obliged to believe the defendant's testimony that he did not fill out the front of the check. See *Ponder v. State,* 227 Md. 570, 572, 177 A. 2d 839 (1962). The defendant had admitted that he had endorsed the check. In addition, he had attempted on other occasions to cash worthless checks at Farmers National. This conduct is sufficient to prove the defendant's guilty knowledge. *Bishop v. State,* 55 Md. 138, 144 (1880). The evidence also established that the check itself was one of the defendant's imprinted checks of the Girard Trust. The testimony by the teller who received the check established that the defendant had uttered the $432.50 check.

The identification by a single eye witness is sufficient to support a conviction as the weight of the evidence and the credibility of the witness is for the trier of facts. See *Booker v. State,* 225 Md. 183, 170 A. 2d 203 (1961).

As we have indicated, the defendant admitted that he endorsed the $432.50 check. This was done with the intent to defraud. We held in *Nelson v. State,* 224 Md. 374, 167 A. 2d 871 (1961) that this was in itself sufficient to constitute forgery. In *Nelson,* the defendant in that case conducted a business as an individual at 1110 Division Street, Baltimore, Maryland under the name of "The Nelson Company." The Glenn L. Martin Company, by an error in the bookkeeping department, mailed several checks, aggregating in amount approximately $36,000 to that company but intending that they should be sent to a com-

pany in the Standard Oil Building in Baltimore also called The Nelson Company. The Martin Company owed the latter company the $36,000 but owed the Division Street company nothing. The defendant Nelson, president of the Division Street company knew that the drawer of the check was not indebted to it and, over the protest of the bookkeeper, endorsed the checks and deposited them in the Division Street company's bank account, thereafter drawing out the money for payment of that company's creditors and for other purposes. After his conviction of forgery, the defendant Nelson contended on appeal that he could not be guilty of forgery because he endorsed the correct name of The Nelson Company on the checks and did not purport to sign any name other than that of that company. In affirming the conviction for forgery, Judge Hammond for the Court, stated:

> "It has long been determined that the writing of one's own name with intent to defraud may constitute forgery. Sir William Blackstone said (4 Comm. 250): 'If a person puts his own name to an instrument, representing himself to be a different person of that name, with an intent to defraud, he is guilty of forgery.' "
> (Page 378 of 224 Md.; page 873 of 167 A. 2d).

From what has already been stated, it is clear that the evidence supports the verdict of the trial court on Count 2 for the uttering of the $432.50 check.

The only point raised by the defendant in regard to the conviction under Count 3 for the false pretense in obtaining money by use of the $275.00 check is that Code, Art. 27, Sec. 140 uses the word "person" and does not add the words "firm, corporation, association, mercantile or rating agency" as appears in Art. 27, Sec. 141.[1]

---

1. The two sections in relevant part, are as follows:
*Section 140* "Any person who shall by any false pretense obtain from *any other person* any chattel, money or valuable security, with intent to defraud *any person* of the same, shall be guilty of a misdemeanor." (Emphasis supplied).
*Section 141* "Any person who shall by any false pretense obtain a credit or rating from *any person, firm, corporation, association, mercantile or rating agency* * * *" (Emphasis supplied).

In construing the word "person" in Section 140, we are directed by Code, Art. 1, Sec. 15 to construe it to *include a corporation,* "unless such a construction would be unreasonable." In view of the purposes of the legislation and the fact that corporations, such as banks, building and loan associations, mercantile establishments, and the like, are the usual victims of various schemes to obtain money by false pretenses, we cannot say that it is unreasonable to include corporations within the meaning of the word "person." On the contrary, we deem it entirely reasonable to include it.

The case at bar is quite distinguishable from the holding in *Shehan v. Tanenbaum, Son & Co.,* 121 Md. 283, 88 A. 146 (1913). In *Shehan,* a licensing act for insurance brokers, which, in addition to regulation of the insurance business, had the purpose of raising revenue and which provided that "no license shall be issued to more than *one person* or the members of a bona fide co-partnership to act thereunder," was held to apply to natural persons and not to corporations as it would be unreasonable to suppose that the General Assembly intended to frustrate the revenue features of the Act by permitting corporations to be licensed which might have an unlimited number of brokers as employees who need not be licensed. In the present case, the purpose of the statute will be carried out, not frustrated, by including corporations within the meaning of the word "person."

Although the point was not raised or decided, we have heretofore affirmed convictions of defendants under Art. 27, Sec. 140 involving the obtaining of money by false pretenses from corporations. See *Sisk v. State,* 232 Md. 155, 192 A. 2d 108 (1963) ; *Waye v. State,* 231 Md. 510, 191 A. 2d 428 (1963) ; and *Willis v. State,* 205 Md. 118, 106 A. 2d 85 (1954).

*Judgment affirmed.*