BRIDGES, J.,
for the Court:
¶ 1. Stacy Bell appeals the judgment and sentence of the Leake County Circuit Court in which he was convicted of three counts of forgery and sentenced to serve three years on Count I, three years on Count II, two years on Count III, each to run consecutively and all in the custody of the Mississippi Department of Corrections. We find no merit to Appellant’s assignment of error and affirm.
FACTS
¶ 2. Mrs. Earnestine Willmon of Walnut Grove, Mississippi maintained a checking account with the Bank of Walnut Grove. Mrs. Willmon kept a supply of checks for the account in a drawer in a table in her home. Mrs. Willmon’s daughter, Robin McLaurin, who resides in Texas, was the only other person authorized to sign and negotiate checks on Mrs. Willmon’s account.
¶ 3. On April 30, 1999, Mrs. Willmon left her Walnut Grove home to visit her two daughters in Texas. She had asked her granddaughter, Hannah Willmon, to care for her pets while she was away. At that time, Stacy Bell and Hannah Willmon were involved romantically. Mrs. Willmon testified that it was her understanding that Hannah and Bell spent a few nights together in her home while she was away. Further, she stated that the only other person having permission to enter her home was Hannah’s first cousin, Misty Gil-mer.
¶ 4. Mrs. Willmon returned to Walnut Grove on May 8, 1999. When she received her monthly bank statement, Mrs. Will-mon noticed several checks had cleared her account which she had not authorized or signed.
¶ 5. At trial Mark Rigdon, a supervisor for Spaceway Oil Company, testified that Bell was a regular customer of the Space-way store in Carthage, Mississippi. Rig-don identified two checks that he accepted from Bell, one on May 2, 1999, and one on May 4, 1999. The first check Rigdon accepted a from Bell was for the amount of forty dollars. According to Rigdon, Bell explained that it was check from his grandmother. Rigdon asked Bell to endorse the check on the back and exchanged the check for cash and Spaceway store products. Rigdon also testified that Bell again sought to cash a check which was in the amount of one hundred dollars. Rigdon accepted the check and gave to Bell one hundred dollars in cash. Rigdon positively identified Bell as the one who entered the station and cashed the two checks drawn on Mrs. Willmon’s account. Later, Rigdon was notified by local law enforcement that there was a problem with the checks.
¶ 6. William Gilmore, a Spaceway station cashier, testified that in early May 1999, Bell entered the store and cashed a check in the amount of fifty dollars. Gilmore positively identified Bell as the one who cashed the check he presented. Gilmore stated that Bell explained that the check *1057 was from someone for whom he had done some work.
¶ 7. In his defense, Bell presented the testimony of Hannah Willmon, his grandmother, Willie Bell, and himself. Hannah testified that she was with Bell on May 1-3, 1999, and on May 4, 1999. According to Hannah, she picked up Bell from his grandmother’s home on the afternoon of May 1, 1999, and that she was with him until the morning of May 3, 1999, when his grandmother picked him up. She stated they did not go to the Spaceway station and that she did not see Bell cash her grandmother’s checks. Hannah also testified that she was with Bell on the evening of on May 4, 1999, and that they did not go to the Spaceway store. The two then spent that evening at Mrs. Willmon’s home.
¶ 8. Bell’s grandmother, Willie Bell, also provided alibi testimony indicating that Bell could not have been the one to cash the checks in question. She testified essentially, that when Bell was not with her during the time in question he was with Hannah. Ms. Bell testified that on the morning of May 4, 1999, she picked up Bell from Mrs. Willmon’s home and took him to Jackson, Mississippi to a doctor’s appointment. After the appointment, Ms. Bell and her grandson returned to her home in Carthage. She testified that she and Bell did not go to the Spaceway store on May 4, 1999. Bell remained at Ms. Bell’s home until Hannah picked him up that evening.
¶ 9. Lastly, Bell testified denying that he cashed the checks in question or that he went into the Spaceway stores on May 2, 3 or 4 of 1999.
RESOLUTION OF THE ISSUE ON APPEAL
¶ 10. On appeal, Bell assigns as error the trial court’s refusal to set aside the verdict and sentence on the ground that the verdict was contrary to the overwhelming weight of the evidence. In so arguing, Bell contends that the evidence presented a reasonable doubt as to his guilt because of the testimony of two witnesses regarding his whereabouts on the days in question. He argues that the alibi testimony created sufficient reasonable doubt as to his guilt, indicating that a reasonable jury could not have found him guilty.
¶ 11. Only when the verdict is so contrary to the overwhelming weight of the evidence that permitting it to stand would sanction an unconscionable injustice will we interfere on appeal. Norwood v. State, 741 So.2d 992 (¶ 11) (Miss.Ct.App.1999). Mrs. Willmon testified that she was away from her home for a week in early May. Additionally, Mrs. Willmon stated that she did not sign the three checks in question and that the only other person authorized to negotiate a check on her account was her daughter. The evidence established that Bell had access to her home and the blank checks, having spent a couple of nights in.Mrs. Willmon’s home. Mark Rigdon positively identified Bell as the one who presented two of Mrs. Will-mon’s checks for cash. Likewise, William Gilmore testified that he knew Bell, that Bell was a regular Spaceway store customer, and that he cashed a check drawn on Mrs. Willmon’s account for Bell. Accordingly, the State presented evidence showing that the signatures on the three checks were not that of the owner or of another authorized signer, that Bell presented the checks for negotiation and that the checks presented were capable of effecting fraud meeting the three essential elements necessary to constitute forgery. See Dunson v. State, 223 Miss. 551, 78 So.2d 580 (1955) (recognizing essential elements of forgery are: a false making or other alteration of an instrument in writing, fraudulent intent, and capability of instrument to effect fraud).
¶ 12. In the present case, the jury’s verdict was not so contrary to the overwhelming weight of evidence as to constitute an unconscionable injustice. “A reviewing court cannot and' need not determine with exactitude which witness or *1058 what testimony the jury believed or disbelieved in arriving at its verdict.” Groseclose v. State, 440 So.2d 297, 300 (Miss.1983). “It is enough that the conflicting evidence presented a factual dispute for jury resolution.” Id. The Mississippi Supreme Court has held that a jury has the right to disbelieve a defendant’s alibi defense and resolve conflicting testimony in favor of the prosecutrix. Goss v. State, 413 So.2d 1033, 1036 (Miss.1982); see also Morris v. State, 379 So.2d 925, 926 (Miss.1980). In fact the supreme court has stated that “a jury is under no obligation to accept an alibi defense asserted by the accused and his witnesses. Rather, an alibi simply raises an issue of fact to be resolved by the jury.” Burrell v. State, 613 So.2d 1186, 1190 (Miss.1993) (citations omitted).
¶ 13. The jury was charged with the duty as fact finder to resolve the conflicts in the testimony. Upon the evidence given at trial, it was reasonable for the jury to believe the eyewitness testimony of Ridgon and Gilmore over the alibi testimony of Hannah and Bell’s grandmother. We find that the evidence did not point so overwhelmingly in favor of Bell that to allow the judgment to stand would sanction an unconscionable injustice. In addition, the testimony of Ridgon and Gilmore and Mrs. Willmon was sufficient evidence to support the jury’s verdict.
¶ 14. THE JUDGMENT OF THE CIRCUIT COURT OF LEAKE COUNTY OF THREE COUNTS OF UTTERING FORGERY WITH A SENTENCE OF THREE YEARS ON COUNT I, A SENTENCE OF THREE YEARS ON COUNT II TO RUN CONSECUTIVELY TO SENTENCE IN COUNT I, A SENTENCE OF TWO YEARS ON COUNT III TO RUN CONSECUTIVELY WITH THE SENTENCES ON COUNTS I AND II, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEAKE COUNTY.
KING AND SOUTHWICK, P.JJ., IRVING, LEE, MOORE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR. McMILLIN, C.J., NOT PARTICIPATING.